Good morning. May it please the Court, David McKim, on behalf of the appellant, Edwin Elliott. I would like to reserve two minutes of my time for rebuttal, if I may. This case presents the interesting conundrum of two wrongs having been committed which end up being held to be a right. What happened here is, as we all know, there was first an execution lien and then a levy. The levy produced proceeds which paid off the execution lien. And then Mr. Elliott filed his Chapter 13 case. The district court granted a 12B6 dismissal on the grounds that – two grounds, essentially. In the adversary proceeding. Yes, that's correct. To avoid the transfer to the bank. There was – excuse me – there was a complaint filed which made two claims, essentially. First was to avoid, as a preference, the transfer of cash to the bank. And then to avoid as impairing Mr. Elliott's homestead exemption rights. The – and – excuse me – and his IRA account rights. The execution lien that was placed on his accounts. So the bankruptcy court held that there was no preference sustainable – right? Go ahead. Oh, that Mr. Elliott could not state a proper claim to set aside a preference on essentially two grounds. First was that there was no ultimate betterment of the bank's position. And the theory underlying that was that the bank had a lien and therefore paying off the lien, because it was the preference action that attacked not the imposition of the execution lien, but the seizing of the cash. And paying off that lien was fine. The bank did not have any betterment because it was purportedly a fully secured creditor in the Chapter 13 case. The other ground for holding that there was no chance to state a claim for a preference is that the payment of the – the using of the cash to pay off the execution lien constituted what I've characterized in my brief as the new value defense to a preference claim. And it is Mr. Elliott's contention that this is just a circular tautology. First of all, you look at the betterment claim, whether or not the bank actually bettered its position. This is found as a requirement under 547B5B. If there is no betterment, then there is no claim. But you look at the statute and it requires that the betterment be calculated disregarding the payment that was made. So the circularity and the reasoning here is to say that the bank did not have any betterment because the cash was used to pay off its lien, that defies 547B5B, which holds that – which requires that the trial judge ignore the payment for determining whether the bank's position had been bettered. If the payment were ignored, then the lien is not satisfied and the bank would lose that lien under Section 522F based upon Mr. Elliott's exemption claim. But the lien was satisfied. The lien was satisfied, but the purpose of the – Well, we do dispute that. Well, under California law, there was an execution lien. Yes. You agree with that. And it was paid. And there was a claim of exemption filed in the Superior Court. Yes. While the sheriff held the money. Yes. As proper procedures under California law. Yes. He claimed an exemption. There was a hearing on it. And the Superior Court denied the exemption. That's correct. And that gave the marshal or the sheriff the authority to release the funds to the bank. That happened. We're not disputing any of this, Your Honor. So does – that terminates the lien? No. The reason it doesn't, Your Honor, respectfully – That – well, you're going to have to explain to me why under California law that didn't terminate the execution lien, which is what was implied. Because under bankruptcy law, when Mr. Elliott filed his bankruptcy case, the preference statute, if Mr. Elliott does validly state a claim for a preference, and we contend that he does, then the object of the preference action would be to restore everything to where it was absent the preferential payment. Well, doesn't that assume that the lien was not fully satisfied? No. No. It means that the – Then I guess I don't understand your argument. The satisfaction of the lien is set aside if the preference action prevails, because then that payment effectively never was made. So the theory of the Bankruptcy Code is to protect the creditor who received the preference by restoring that creditor to what it had before the preferential payment was received. So it would be entirely unfair to the bank, and it's contrary to the preference law to hold that the bank would not have its lien resurrected if the payment were reversed as a preference. So the – But doesn't that all sort of depend on the property being part of the bankruptcy estate? Yes, and the law is quite clear that even exempt property is property of the estate. It is just exempted. Well, I'm going to have to go back and go through this again. But I had understood that because everybody agrees there's an execution lien. Yes. Money was acquired. There was a proceeding in Superior Court.  Money was transferred. Lien was satisfied. Property was no – the money was no longer an asset of the estate. Except for the intervention of Chapter 13 and Section 547, the preference statute, which would have allowed the trustee or the trustee declining. Then under Section 522H, Mr. Elliott can bring a preference action to set aside the payment. And then under bankruptcy law, Your Honor, is completely correct. Under state law, the lien is paid and it should have been discharged. Under bankruptcy law, because there is no preference – a similar preference statute under California law, under bankruptcy law, the – if the payment were determined to be a preference, then that execution lien would be resurrected for the benefit of the bank. That is why we also included the claim to the 522F exemption over the – over the assets, because we realized that if the preference action prevailed, which we think it should, that the lien would still exist and we'd have to deal with that some way. Otherwise, you know, why go to court? Okay. Did you want to save some time for – Yes. Is that all? I think that's – thank you. Good morning. May it please the Court. My name is Alexandra Rim. I represent the EPALI, which is Pacific Western Bank. Your Honor, I have a similar confusion about this case. I think there's some circularity, and also it seems to me that really the crux of what is going on is that the debtor is trying to undo what the state court had authorized us to do. That's obvious. Thank you. And that result is not permitted here. I don't believe that there is some sort of intervening bankruptcy that should change the result. The key facts here are that, and nobody disputes it, the bank had an execution lien which was perfected prior to the 90-day preference period. Judge Montali found that correctly. No one disputes that. As a result, money was released, and the bank levied, seized on that cash, and applied it to the debt. So the levy and all of those necessary actions had occurred. It had satisfied that valid execution lien. So contrary to how the debtor characterizes it, there was no double wrong here. The debtor had a chance. There was a noticed hearing before the Superior Court where the debtor attempted to challenge the cash, well, I should say tried to exert the exemption claim. The debtor lost. The debtor had the opportunity then. The debtor had remedies in the state court system to address that. The debtor did not. Let me ask you, can I just stop you right there? I want you to come back to that. Suppose he had filed a bankruptcy petition before the Superior Court had ruled. That would have stopped everything, right? We'd be in a different world. I think the analysis would be different because in that situation, we would not have executed and applied the cash in satisfaction of the lien. We'd be in a different world. I think so. Without having going into the full analysis. So let's go back to where you were, which is? Yes, so again, the key fact is that the debtor attempted to assert the exemption claim in the state court and lost. That's in the record. No one disputes that. After the execution lien was seasoned beyond the 90-day preference period, and then again, the cash was levied and the execution lien was satisfied, then the debtor had filed bankruptcy. And now the debtor, again, there's a lot of retroactive relief that the debtor seeks. The debtor is seeking to step into the shoes of the Chapter 7 trustee. And again, we're dealing with a Chapter 7 case. I think counsel misspoke. It's not Chapter 13. The debtor is trying to step into the shoes of the Chapter 7 trustee in asserting 522H, the preference statute. And again- May I ask you a question? Clear this up for me because we don't deal with bankruptcy cases every day here and you might help me out on this a little bit. The 90-day preference period says that any payment made within 90 days prior to position can be attacked as a preference. Is that so? In general terms, there are five or so prima facie elements to transfer property of the debtor, for antecedent debt, et cetera. Judge Montali found that one of those prima facie elements was not satisfied here. Which is? Which is 547B5, that did the creditor receive better treatment than it would in a Chapter 7 liquidation. That was not the case here because Judge Montali found that we already held a perfected, unavoidable execution lien. So it wasn't a 90-day issue where the petition was filed beyond the 90-day period. He found that there was no betterment because you had already executed your lien. Exactly. We had executed our, again, valid, unavoidable execution lien that nobody disputes. So because of that, Judge Montali found, well, you're no better off because as the word preference connotes, we did not get any kind of preferential treatment, and this commonly arises in preference litigation where if you are a secured creditor, we often say, well, that's not a preference issue because you have the lien rights, so you got payments on account of your lien rights. And that is what happened here. You were entitled to 100% of your debt whether it was in bankruptcy or not in bankruptcy, right? That is our position because we had that perfected execution lien outside of the 90-day period. So, again, what it boils down to is the prima facie elements of preference are not satisfied here. Also, and we've sort of addressed this before, I think the debtor, again, is trying to attack his inability in the State court to have asserted his exemption. I think what he's trying to do would run afoul of Ricker Feldman. Can't do that in the bankruptcy court. I think he's stuck with how things are when he filed the case. The debtor also then tries to bootstrap it by asserting 522F, and that is a different provision whereby a debtor can avoid a judicial lien to the extent it impairs an exemption. Two prongs are missing here. 522F, the statute talks about avoiding the fixing of a lien, and this often arises, for instance, where a debtor has a judgment lien against his home, and the debtor says, this is impairing my homestead exemption. In all these cases, the lien presently exists at the time the bankruptcy case is filed, and, again, we've established that is not met here. And also, the second problem is that the debtor has no entitlement to an exemption. He's already lost that fight. So 522F cannot be met in order to avoid the bank's lien, and so the debtor is unable to bootstrap 522F to avoid our lien to therefore say that the debtor has preference claim. Those are the two statutory claims to try to claw back the cash from the bank. We also raise the argument that we believe that there is a statute of limitations issue here. This is a case where I believe a big impetus for filing bankruptcy was to try to deal with the levy, and the debtor had ample opportunity to bring the action timely. The debtor did not. The Bankruptcy Code section has the Bankruptcy Code has a section that imposes the statute of limitation to file this sort of action, and it talks about the earlier of, and I'm talking about section 550F, talks about the earlier of a one-year period or before the case is closed. The case is closed. The case is reopened, though. And then the case is reopened. So does the period start to run again? And that's the question. Obviously, we say that that seems highly odd, that you can simply keep reopening a case. It seems problematic. There are cases, and we've cited to Sandoval and Femisone. Those cases deal with a similar factual situation. Well, if you're right on the merits, we wouldn't have to get there. We wouldn't have to decide that. Yes. It's not jurisdictional. We raised the statute of limitation issue as an alternate ground for affirmance. Judge Montali also did not reach that issue because he felt the debtor loses on the merits. But again, I want to say that not only does the debtor have problems in terms of the merits of the case, the case is simply time barred. The debtor reopened the case after we raised the issue in our 12B6 motion that it was time barred. And if you look at the timing, there's no surprise. There's no delayed discovery. There's no justification for it. The debtor in April 2017 filed amended schedules where the debtor indicated that the cash we're discussing was seized. And then May 25 of the same year, a month later nearly, the trustee files a report, a no-asset report. Usually that signifies that the case is going to be closed. So the debtor is aware of the issue. Then approximately a month later in June 21, the bankruptcy case is closed. Then in July 12, the debtor files the adversary. We file our 12B6 motion shortly thereafter. Then in the fall, October of 2017, the debtor gets the case reopened and says, voila, I've reopened the case. I'm okay. I'm safe again. But I don't think that's what is intended. It's – it would be an extreme oddity to be able to close a case and then later on reopen it. The debtor says that the debtor should have the chance for the case to be administered. That, again, is circular because I think everyone could raise that argument. So, Your Honor, for all those reasons, we would request that Judge Montali's decision, which was then affirmed by the district court, the first level of appeal, we would request that the ruling be affirmed. Thank you. Thank you. The fundamental issue here is to what extent does the bankruptcy code effectively trump state law and allow certain events which happened up to 90 days pre-filing of the bankruptcy case to be reversed, to be completely undone, regardless of the impact of state law? And the impact here is twofold. Number one, a valid bankruptcy preference action was stated because the two reasons for throwing it out for the reasons that I mentioned just don't wash. And if that payment then is reversed, if it is determined that the bank does not have the benefit of that payment, then what becomes of the lien? The lien has to be resurrected for the benefit of the bank. Otherwise, the bank loses the preference claim and it loses vested rights that it had. But the lien then becomes assailable under 522F. Now, counsel argued that this is essentially a res judicata issue because a lien claim was made in State court and was rejected. Well, it was rejected on procedural grounds. But aside from that, this is a different set of exemptions that are being claimed. Your Honors, I'm quite confident and aware that under the current edition of the bankruptcy code, you can either choose State exemptions or you can choose the specially enunciated Federal exemptions. In this case, Mr. Elliott has elected the Federal exemptions. So whatever became of his State exemption claim doesn't matter anymore. It becomes a new set of exemptions that are being sought. Is there a case that says that? That says that? That even though the State court, you know, despite the State court's ruling and his attempt to claim an exemption there, that now we're in bankruptcy court and we just disregard. I understand. Just disregard what happened in State court. With regard to the exemption claim? Yeah. Yeah. Just forget that. The first time I heard the argument that the 522F claim was barred because of the State court proceeding was today. So I did not research that. I would be happy to, as Your Honor invited. No, that's all right. We'll take a look at it. And then in regard to the statute of limitation argument, as Counsel indicated, there are two bankruptcy court decisions that have held that the reopening of a case does not reinstitute the running of the statute of limitations. There are three bankruptcy appellate decision, bankruptcy appellate panel decisions in the Ninth Circuit which have rejected that approach and have held the preeminent one is petty. They're all cited in our brief, which have held that in a case such as this where the closing of the case is inadvertent and that the case truly has not been fully administered that it should be reopened and that all the rights should be reinstated. Thank you. Thank you. Thank you, Counsel. Both of you. We appreciate your arguments very much. Interesting case. The matter is submitted at this time. That ends our session for the morning. All rise.
judges: Paez, Bea, Adelman